## Staunton.

### LUCY M. RICE V. MARY B. OAKES FREELAND.

#### September 22, 1921.

#### Absent, Sims and Burks, JJ.

1. WILLS—*Jurisdiction—Residence of Deceased—Soldier.*—A soldier, not originally a resident of Roanoke, married in that city, and after the marriage, so long as he remained in Roanoke, regarded the home of his mother-in-law, with whom his wife resided, as his home. Prior to the marriage he agreed with his future wife that he would make Roanoke his home after his discharge from military service. Shortly after the marriage he, went with his company to France. His wife remained in Roanoke with her mother, and in letters from France he reiterated his purpose of returning to. live there permanently.

   *Held:* That the soldier was a resident of Roanoke within Code of 1919, section, 5247, conferring jurisdiction of the probate of wills on the circuit and corporation courts in the county or corporation wherein the decedent had a "known place of residence."

2. WILLS—*Soldiers—Letter to Wife.—Intent.*—In the instant case it was held that the lower court did not err in according testamentary effect to a soldier's letter written in France in direct contemplation of the fact that the writer might not survive the war, containing a definite expression of the disposition which in that event he desired to have made of whatever property he might leave behind, notwithstanding that the testator in all probability did not think he was writing a will.

3. WILLS—*Intent—Testamentary Form.*—It is not always necessary to the validity of a will that it should have a testamentary form, or that the testator should know that he had performed a testamentary act, or that he should intend to perform such act.

Error to a judgment of the Corporation Court of the city of Roanoke in admitting a will to probate.

*Affirmed.*

The opinion states the case.

*Hall, Wingfield & Apperson,* for the plaintiff in error.

*A. B. Hunt* and *Staples, Cocke & Hazelgrove,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a writ of error to a judgment of the Corporation Court of the city of Roanoke, admitting a certain letter to probate as the last will and testament of John C. Freeland, deceased. Two errors are assigned—first, that the letter in question shows on its face that it was not a will and was not intended as such; and second, that the court did not have jurisdiction because Freeland had no residence or estate in Roanoke, and did not die there. We will dispose of these assignments in their inverse order.

1. John C. Freeland came to Roanoke as a private in the United States Army in August or September, 1917. Prior thereto he had been in Fredericksburg, but for how long a time does not appear. The record discloses no other facts in respect to his previous residence. While stationed in Roanoke, on May 6, 1918, he was married to Mary B. Oakes. After the marriage, so long as he remained in Roanoke, he regarded the home of his mother-in-law, with whom his wife resided, as his home; and prior to the marriage he agreed with the latter that he would make his home in Roanoke after he was discharged from military service. Shortly after the marriage he went with his company to Chattanooga, where he was stationed for a short time, and then went to France. His wife remained with her mother, and received numerous letters from him, exhibiting great affection for her and an interest in the household. In one of these he wrote: "My heart and prayers are with you

and I hope my prayers will be answered, and if they are, I will be back to old Roanoke by Christmas, or on the way." In a letter to his wife's mother he said: "I am always thinking about all of you and I hope that I will be back again soon for I long to see old Roanoke, Va., once more." Again, in a letter to his sister, he said: "The way the Allies are fighting the Germans they won't last very much longer and then I will return to Roanoke, Va., to live the rest of my days."

Freeland died in France from wounds received in action.

[1] Upon this evidence the corporation court held that it had jurisdiction in the matter of Freeland's will, and in this view we concur. The statute, Code 1919, section 5247, so far as material here, provides that the circuit and corporation courts "shall have jurisdiction of the probate of wills according to the following rules—that is to say, in the county or corporation wherein the decedent has a mansion house or known place of residence." Freeland was not originally a resident of Roanoke—he had formerly resided at some other place not disclosed by the record—but he of course had the right and power to adopt a new residence at will, by a union of intention and bodily presence—*animus et factum*. The evidence shows that before the marriage to Miss Oakes he agreed to reside at Roanoke as soon as discharged from the army; that after the marriage, and while still in Roanoke, he regarded that city as his home; and that he reiterated in his letters from France the purpose of returning to live there permanently. This, in our opinion, was sufficient to sustain the finding of the court in regard to his residence.

2. Under date of July 20, 1918, Freeland wrote to his wife a letter consisting of several sheets apparently written in different sections or installments. This letter was offered by her for probate as his will and admitted by the court as such. So far as immediately pertinent, that letter was as follows:

"Now, sweetheart, don't worry about the 'lotment or insurance for you will get everything that is coming to me. We are so we can hear the guns roar most of the time and soon will be on the firing line, but the sooner we get there the sooner the war will be over, and then I will return to the one I love best. Tell little Mamie to write to me too and all the rest of the folks. * * * I will write to the New York bank and have them send my liberty loan bond money to you and you can do whatever you think best with it. * * * I am not coming back until this war is over and then I will return to you. I have fixed the insurance and allotment so you will get it all right."

A number of other letters were introduced in evidence for the purpose of showing the alleged testator's situation and surroundings, and his regard for his wife. They clearly show, as does the one of July 20, 1918, that she was the principal object of his concern and affection; and, while many of them express the hope on his part of an early return to Roanoke, they have no room to doubt that they were written in contemplation of the probable fate which overtook him. For example, in September, 1918, he wrote her a letter in which he said this: "I will always be *"trueful* to you and keep you in my mind for I am coming back to you just as I came away from you if I live to get back, and if nothing happens I will be back alright." Again he wrote: "I don't think this war will last only to Xmas. Anyway, I hope not, for I want to come back to you, and I want to come back alive too, and I may have some wounds but I hope I won't have many, anyway, but I can't tell anything about it for the shells you know is some hot over here sometimes."

[2, 3] The case is not free from difficulty if we adhere strictly and rigidly to a literal application of the rule as generally expressed, that a paper to operate as a will must have been intended as such at the time it was written. We are

frankly, and we believe properly, relaxing in some measure the ordinary rules of construction in this case, and we are doing so in recognition of the general tendency of the legislatures and the courts to treat soldiers in actual service as belonging to a class of persons entitled to public gratitude and special consideration in respect to their private and property interests. It is said in Schouler on Wills and Administration, section 38, that "seamen and soldiers are treated with peculiar indulgence in our law as a class of persons not only entitled to public gratitude, but as requiring in a measure public protection against their own improvidence and the wiles to which they are exposed." While this is not a case in which there is any occasion to protect the estate of the soldier against "the wiles to which he was exposed," it is a case in which he appears to have been somewhat careless and improvident in the making of technically accurate and correct provision for the disposition of his estate. Upon a careful consideration of the letter which the court admitted to probate, and in the light of the circumstances above detailed, we have reached the conclusion that the corporation court was right in according testamentary effect thereto. We have no doubt whatever that the letter was written in direct contemplation of the fact that the writer might not survive the war, and was a definite expression of the disposition which in that event he desired to have made of whatever property he might leave behind. It is true, as argued for the plaintiff in error, that the allotment referred to was an allowance which Freeland was required by Federal statute to make to his wife out of his pay; and it is also true that in referring to the insurance he said that he "had fixed" that as well as the allotment so that his wife would get it all right. This is not in itself testamentary language, but it is not in serious conflict with the general intention otherwise sufficiently expressed, as we think, in the same letter, that he expected and desired her to get all of his property.

In the case of *McBride* v. *McBride,* 26 Gratt. (67 Va.) 476, relied upon for the plaintiff in error, the court through Judge Staples, in laying down the general principles applicable to cases involving questions of testamentary intent, said: "It is not necessary to the validity of the will that it should have testamentary form, or that the testator should know that he had performed a testamentary act, or that he should intend to perform such act." And while there are expressions in that case which tend strongly to support the argument that the paper admitted here as Freeland's will ought not to be regarded as a testamentary document, we do not think, regarding the opinion as a whole, that there is any conflict therein with the decision of the lower court in this case. The testator, Freeland, in all probability, did not think he was writing a will, but he was expressing in writing what he desired to be done with his property including his insurance, which is admitted to be practically the only estate of consequence involved here, in case of his death in action.

The English case of *Gattwood* v. *Knee,* 4 B. R. C. 910, 1 Law Rep. 1902, Probate Div., p. 99, is somewhat in point. In that case William Knee, a private in a branch of the British army, wrote a letter to Wiliam Gattwood which, after Knee's death, was admitted to probate as a will. The letter, like the one involved in this case, spoke of other things, but contained this language: "I am sending a box of things to you which I want you to look after for me until I come home. * * * They are a lot of curios and there is some things for you there, but if you have a letter saying that I am killed then the lot is for you. * * * You will receive the lot if I am killed in action for I shall make out my will in your favor; so you can keep this letter in case you want it for anything, but let us hope that I arrive home safe again." The probate of this letter was resisted, and it was contended that the document ought not

to be treated as a will because it contained the words, "I shall make out my will in your favor," thus showing that the writer did not intend that particular document to be the will. This contention was overruled and the letter was given testamentary effect. We are unable to see any very substantial distinction between that case and the one at bar. It is true that Knee's letter expressly referred to a future will, but no other will was ever executed. In the instant case Freeland's letter said: "You will get everything that is coming to me," and later on added that he had fixed the insurance and allotment so his wife could get it all right. The record indicates that previous to his marriage he had named some other beneficiary in the insurance policy, and, so far as appears, he had not effectively "fixed" the insurance so that his wife would get it. The point is, however, that neither in the *Knee Case* nor in this case did the writer of the letter in question believe that he was making a will, and yet the English court in the *Knee Case* and the Corporation Court of Roanoke in this case (properly, as we think) held that the writer had made a testamentary disposition of his property, because he had stated in writing what he intended and desired to be done with his property after his death.

In Virginia the policy of liberality and relaxation in favor of soldiers and seamen with respect to the making of wills of personal property finds legislative recognition in section 5231 of the Code. No real estate appears to have been owned by Freeland. Expressly limiting our decision to the facts of this particular case, we are of opinion that the judgment complained of was right, and the same will be affirmed.

*Affirmed.*