## MORGAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2474.

Army and Navy ⬅51½, New, vol. 12A Key-No. Series—Letter written by World War soldier in actual military service, willing war risk insurance to foster parents, held to effect change of beneficiary (Act Dec. 24, 1919, § 4, subd. 4a [Comp. St. Ann. Supp. 1923, § 514mmm]; Civ. Code S. C. 1922, § 5360).

Letter written by World War soldier in actual military service to foster mother, willing war risk insurance to foster parents, *held* sufficient to effect *change of beneficiary*, under Act Dec. 24, 1919, § 4, subd. 4a, being Comp. St. Ann. Supp. 1923, § 514mmm, notwithstanding no effort was made to probate letter as his last will, in accordance with Civ. Code S. C. 1922, § 5360.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Aiken; Ernest F. Cochran, Judge.

Action by Louise Morgan and others, individually and as administrators of the estate of Carey Kettles, deceased, against the United States. Judgment for the United States, and plaintiffs bring error. Reversed and remanded for a new trial.

Paul T. Chance, of Augusta, Ga., and John F. Williams, of Aiken, S. C., for plaintiffs in error.

J. D. E. Meyer, U. S. Atty., of Charleston, S. C. (C. L. Dawson, Atty., U. S. Veterans' Bureau, of Washington, D. C., and Louis M. Schimel, Asst. U. S. Atty., of Charleston, S. C., on the brief), for the United States.

Before WADDILL and PARKER, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge. This is an action brought by the plaintiffs in error, hereinafter designated plaintiffs, both individually and as administrators of the estate of Carey Kettles versus the United States of America, hereinafter referred to as defendants, to recover on a war risk insurance contract issued to Carey Kettles while a soldier in the army of the United States. The case was submitted to the District Judge on a written stipulation waiving a jury. The findings of fact made by the District Judge are accepted by both sides as correct, and, somewhat abbreviated, they show the following case:

Carey Kettles, about 1908, when about 15 years of age, went to the home of John Morgan, Sr., and his wife, Louise Morgan, in an apparently poverty stricken condition, without friends or relatives, and was received by them into their home and taken care of as if he were a member of the family. There was no legal adoption of him as a son, but he was treated as a member of the family and so considered. He worked on the farm, lived in the home, and was treated altogether as one of their own children. On August 24, 1918, he enlisted in the military service of the United States, and continued in such service until he died, January 19, 1919, in an army hospital at Camp Jackson, S. C.

On September 1, 1918, there was issued to Kettles a certificate of insurance in the form prescribed by the Director of the Bureau of War Risk Insurance in the sum of $10,000, payable to himself in case of death or total permanent disability in monthly installments of $57.50 each. In the application for the insurance Kettles requested that the certificate should be sent to his foster father, John Morgan, at Bush, S. C., and some time between that date and the date of his death, a little more than four months later, he wrote the following letter to plaintiff Louise Morgan:

"Ward J 10, Base Haspital.

"My Dear Mother: It is with great pleasure that I sit down to write you a few lines. My dear mother, I am wanting to hear from you all. I hope to see you all but haven't got no answer back yet. I want to come home and help you all work and I want you and papa to please come and get me. Mother, please pray for me. I want you and papa to please pray for me night and day. Please pray for me, mother, I want to come home and I want you please to let me come and work. Please answer these few lines. I have took out insurance and willed it to you-all—$10,000. You all will get it if I die. Nobody else can get it. Give my love to all. Please answer right back. Address Ward J 10, Base Hospital, Camp Jackson, S. C.

Carey Kettles."

The learned District Judge before whom the case was tried below, though specifically finding that plaintiffs John Morgan and Louise Morgan for a period of more than one year prior to his enlistment as a soldier, stood in loco parentis to deceased, was of opinion that this letter could not be considered as the last will and testament of Kettles, designating plaintiffs as beneficiaries. If he was in error in this conclusion, it is obvious that the decision should have been in favor of plaintiffs, for under almost identical circumstances the Supreme Court of the Unit-

ed States has recently so decided. Emma White v. United States et al., 46 S. Ct. 274, 70 L. Ed. ——, decided March 1, 1926. In the last-named case White, a soldier, was insured by the government, under the War Risk Insurance Act of October 6, 1917 (40 Stat. 398), under a policy identical in all respects with that issued to Kettles. When the policy was issued to him, he designated his mother as the beneficiary, and at the same time wrote a letter to his aunt, with whom he had been living, stating:

"I had my insurance made to mother but I wrote to her and told her about it and if anything should happen to me she will get $57.50 a month until she had drawn $10,000, and she is to give you half of it. I couldn't have it made out to both of you all, now this is in case of anything happen to me, witch I hope wont nothing happen to me, all I can do trust in the Lord."

In that case, as in this, the claimant (the aunt) was, at the time the policy was issued, not within the permitted class of beneficiaries under the acts of Congress; but in that case, as in this, by subsequent acts of Congress the class of persons entitled to be designated has been enlarged to include, in that case aunts, and in this persons who have stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year. 41 Stat. 371, § 4, subd. 4a (Comp. Stat. Supp. 1923, § 514mmm). The only difference in the two cases is that in the White Case the letter of the soldier to his aunt was admitted to probate as his will by the probate court of his residence. In this case no effort was made to probate the letter as a will, and it is insisted on behalf of the United States that it is not susceptible of that designation under the statute laws of South Carolina. In Virginia, which was the residence of White, holographic wills are permitted by statute. In South Carolina they are not. But in the latter state, by section 5360 (section 26), volume 3, Code S. C. 1922, "any soldier being in actual military service, or any mariner or seaman being at sea, may dispose of his movable, wages and personal estate as he or they might have done at common law."

The common law spoken of was, of course, the law of England as it existed at the time of the colonial settlements—"a system of unwritten law, not evidenced by statutes, but by tradition and the opinions and judgments of the sages of the law" (Riddick v. Walsh, 15 Mo. 519, 536)—and it will be conceded that at common law a will of personalty was good without any writing. In England, at the period of American colonization, soldiers and seamen, and some others under special circumstances, could legally make nuncupative wills, or could make bequests of their personal estate by letter or other informal means, and this was not changed by the English statute of frauds (29 Charles II, 1676–77). Even subsequent to 1837 these same rights were extended by statute (1 Vict. c. 26) to soldiers and mariners.

In nearly every American state the right is preserved to soldiers and sailors, and in most of them to persons in extremis, to make nuncupative wills, and the tendency of the courts, particularly since the World War, has been altogether to treat soldiers and seamen in such matters with peculiar indulgence. Where there is a writing, it is usually sufficient if it shows a testamentary intent, and expresses the desire of the soldier or sailor as to the disposition of his property after death. In a recent Virginia case, Rice v. Freeland, 131 Va. 298, 109 S. E. 186, a letter from a soldier in France to his wife in Virginia, in which he said: "Don't worry about the 'lotment or insurance for you will get everything that is coming to me. * * * I have fixed the insurance and allotment so you will get it all right"—was held sufficient, notwithstanding the testator in all probability did not think he was writing a will. So, in the English case of Gattwood v. Knee, 4 B. R. C. 910, a private in the British army wrote a letter to Gattwood, saying: "I am sending a box of things to you which I want you to look after for me until I come home. * * * They are a lot of curios, and there is some things for you there, but if you have a letter saying that I am killed then the lot is for you"—which was admitted to probate as a will.

In another case (In re Hickey's Estate, 113 Misc. Rep. 261, 184 N. Y. S. 399) an American soldier in active service overseas, having a government insurance policy payable to his estate, wrote a letter to his minor sister, saying: "Did you ever receive my insurance policy from the government? I tried to make it payable to you, but they said it would have to be one of my parents or brother or sister over 21; so I had to make it out to myself, but Sis will get the money if anything does happen to me." This was held to be a valid bequest of the insurance policy, and as such was admitted to probate, the theory of the law being said to be: "From

the absolute necessities of military service, the solemn and formal rules as to testaments are relaxed in favor of soldiers."

That the soldier in the case at bar was in actual military service, is admitted. The United States were at war with Germany. He had enlisted and was enrolled in the military service, and was on duty in a military camp, presumably about to be sent overseas. He was taken ill and removed to the hospital, and while in that condition wrote the letter hereinbefore quoted. See the case of Van Deuzer v. Gordon, 39 Vt. 119. See, also, Schouler on Wills, Ex & Ad. (6th Ed.) vol. 1, § 439, note.

"The general danger to which all soldiers are exposed in such a situation, the chances of being suddenly posted elsewhere without good opportunity to arrange one's affairs, not to add other reasons, such as the inconvenience of procuring writing materials in camp suitable for solemn documents, the absence of legal advisers, and the unskillfulness and illiteracy often found among military comrades, all plead in favor of treating a soldier's informal testament, whether written out or dictated, as genuine, if only established."

In this case, the letter admittedly being genuine, we are of opinion that the court below erred in rejecting it as insufficient under the provisions of the act providing that a change of beneficiary may be made by last will and testament, and this, too, notwithstanding no effort was ever made to have it admitted to probate as his last will. Helmholz v. Horst (C. C. A. Sixth Circuit) 294 F. 417.

It follows, therefore, that the judgment of the lower court must be and is reversed, and the cause remanded for a new trial in accordance with this opinion.

Reversed.