## McNelis' Estate

*Joseph Atlas,* for exceptant.

*Norris S. Barratt, Jr.,* and *Dewey Hoffman,* contra.

VAN DUSEN, J., March 15, 1935.—A soldier wrote to his uncle two letters in which he said among other things:

"I have taken out a $10,000 insurance policy, this will cost me $6.90 a month the older you are the more it costs. I tried to have you named as my bene-

ficiary on this but I was unable to do so as it must be your father, mother, sister or bro. If I have to go abroad I will have to leave it as an estate in case anything happens you get $57. and some cts a month in case you are wounded severely or killed." (Letter May 19, 1918.)

"My insurance is made out to myself but in case anything happens to me you can pobably claim it. I will have a will made out anyway before we go into action." (Letter of July 23, 1918.)

If these letters had been written by a civilian they would not have been entitled to probate as a will: Willing's Estate, 212 Pa. 136; Kauffman's Estate, 283 Pa. 375. The phrase "you can probably claim it" comes the nearest to being dispositive. But the utmost it can mean is "you can probably successfully claim it" or "I think the law will give it to you". This is not a bequest—it is a mistaken conclusion.

Soldiers in active military service may make nuncupative wills: section 5 of the Wills Act of June 7, 1917, P. L. 403; Henninger's Estate, 30 Dist. R. 413; like civilians in extremis: section 4 of the Wills Act. It is said that this is a "privilege" and that the rigors of the law relating to the execution of wills are relaxed for their benefit: Henninger's Estate, supra, passim.

Carrying this idea further, it has been held that the general rules for the construction of writings are also to be relaxed in the case of soldiers' writings, and that expressions not dispositive, but only showing an intention to do something in the future, or, as in this case, a mistaken idea as to the effect of what had already been done, may in the case of a soldier be deemed testamentary. This was the result reached in the following cases; in all of which the soldier's insurance was actually payable to his estate:

In Hickey's Estate, 113 Misc. Rep. 261, 184 N. Y. Supp. 399, the soldier's letter contained the following: "Did you ever receive my insurance policy from the government? I tried to make it payable to you, but they said it would have to be one of my parents or brother or sister over twenty-one, so I had to make it out to myself, but Sis will get the money if anything does happen to me" and another letter "My insurance is made out to Nan". In Rice v. Freeland, 131 Va. 298, 109 S. E. 186 the soldier wrote to his wife "I have fixed the insurance and allotment so you will get it all right". In Smith's Estate, 308 Pa. 265, the soldier wrote to a friend that the insurance was "made out in Bennie's name and that is where it is going to stay." Bennie was his uncle. The Orphans' Court of Wyoming County admitted this letter to probate as a will, and no appeal was taken from the probate. On appeal from the decree of final distribution it was held that the decree of probate was conclusive of the testamentary character of the document; and the Supreme Court therefore did not pass upon the real question involved. See also Gattward v. Knee, L. R. [1902] Prob. 99; Godman v. Godman, L. R. [1919] Prob. 229; Page on Wills (2d ed.), sec. 386.

Our statute law relating to the execution of wills is derived from the Act of 29 Car. II, c. 3, which is known generally as the Statute of Frauds and Perjuries, and which dealt also with contracts with respect to land, liability for the debt of another, and other topics: Commissioners' Notes to the Wills Act of June 7, 1917, P. L. 403; 27 C. J. 123. Nuncupative wills are an exception to the general provisions for the execution of wills, because it is thought more important in an emergency to provide a ready means of expression than to protect testators and heirs against fraud. For this policy we are not responsible. But it is a mistake to regard the Statute of Wills as a burden to a testator—it is a privilege. The soldier no less than the civilian needs pro-

tection against schemers, and we see no reason why his unexecuted projects or mistaken notions should be given testamentary effect any more than any other man's. Schouler on Wills, (6th ed.) sec. 70, speaking of the "indulgence" of the law toward the sailor and soldier says that they require "public protection against their own improvidence and the wiles to which they are exposed." If a letter of similar import had been written by a soldier, not to the uncle who had brought him up, but to a female acquaintance of a few days, we would very readily see the danger of depriving the soldier of the protection of the Statute of Wills.

The exceptions are dismissed and the opinion of the hearing judge is confirmed absolutely.