# Wytheville

## MURGUIONDO V. NOWLAND'S EXECUTOR AND OTHERS.

### June 12, 1913.

1. WILLS—*Execution—Signature of Testator—Place of Signature—Case in Judgment.*—The will of a testatrix was written on six sheets of paper. When the attesting witnesses were called upon to witness the execution of the will, each one of the sheets of paper upon which the will appears, except the last, had already been signed by the testatrix, who, in the presence of the witnesses affixed her signature to the margin of the last sheet nearly opposite the end of the will and above the concluding clause. The subscribing witnesses then attested the will in the usual form. These witnesses in their testimony before the jury, establish every formality required by the statute law of this State with respect to the execution of a will.

   *Held:* The will was signed by the testatrix in such manner as to make it manifest that the name was intended as a signature and the will was duly executed. No man publishes an instrument as his last will and testament, and calls on witnesses to attest the fact, until he has completed the act. The attestation must be annexed or subscribed to a complete instrument, to which, when so subscribed, no additions can be made. To the act itself the law attaches testamentary intent, that it is a concluded instrument, and if the party is under no restraint, acts freely, and is of sane mind, no further proof is requisite to sustain the instrument as a will.

Error to a judgment of the Chancery Court of the city of Richmond on a motion to admit a will to probate. Judgment for the executor. One of the defendants assigns error.

*Affirmed.*

The opinion states the case.

*R. R. Hicks* and *H. M. Smith,* for the plaintiff in error.

*Meredith & Cocke* and *Leake & Buford,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Robert E. Macomber, named as executor in a certain paper writing dated March, 1910, offered it for probate in the chancery court of the city of Richmond as the last will and testament of Bettie W. Nowlan. All of the parties interested in the probate were summoned to appear before the court, a jury was asked for and impaneled, and the testimony of the subscribing witnesses having been introduced, Mary de Murguiondo, one of the parties contesting the will, demurred to the evidence; but the court overruled the demurrer and entered a judgment declaring the said paper writing so offered to be the true last will and testament of Bettie W. Nowlan, deceased; and thereupon a writ of error was awarded the appellant.

The paper which was produced and probated as the will of Bettie W. Nowlan, deceased, is written upon several sheets, and upon the margin of each sheet appears the name of Bettie W. Nowlan. When the attesting witnesses were called upon to witness the execution of the will, each one of the sheets of paper upon which the will appears, except the last, had already been signed by the testatrix, who in the presence of the witnesses affixed her signature to the margin of the last sheet nearly opposite to the end of the will, which concludes as follows:

"Witness my hand and seal, which I have set to this my will, consisting of six pages of paper, each of which bears my signature in the margin thereof, on this the day of March, 1910, at Richmond, Virginia.

[SEAL]"

Then follows the attestation of the witnesses as follows:

"Signed, sealed, published and declared by Bettie W. Nowlan, as and for her last will and testament, in the presence of both of us, both being present at the same time, and both of us in her presence and at her request and in the presence of each other have hereunto subscribed our names as witnesses.

> "HUGH W. JONES,
> "E. G. THOMAS."

In their testimony before the jury, these witnesses to the will established every formality required by the statute law of this State with respect to the execution of a will, and the sole question for our determination is whether a signature of the testatrix upon the margin of the will is such a signature as is contemplated by our statute.

Our statute of wills, which is found in section 2514 of the Code, as originally passed, was, as is stated by Judge Allen in *Waller* v. *Waller,* 1 Gratt. (42 Va.) 465, 42 Am. Dec. 564, a transcript of 29 Car. II, with the exception that it dispenses with subscribing witnesses in cases of wills wholly in the handwriting of the testator, while the English statute required the will to be attested and subscribed by three or more credible witnesses, in holographic as well as in other wills. In 1849 our statute was amended by the introduction of the words, "in such manner as to make it manifest that the name is intended as a signature." There have been numerous cases before this court arising under that statute, but they were all cases of unattested holograph wills.

In *Ramsey* v. *Ramsey,* 13 Gratt. (54 Va.) 664, 70 Am. Dec. 438; *Roy* v. *Roy,* 16 Gratt. (57 Va.) 418, 84 Am. Dec. 696, and *Warwick* v. *Warwick,* 86 Va. 596, 10 S. E. 843, 6 L. R. A. 775, it was held that the name of the testator appearing in the will was not placed there "in such manner as to make it manifest that the name was intended as a signature," and the wills were rejected.

*Dinning* v. *Dinning,* 102 Va. 467, 46 S. E. 473, was also
a holograph will, in which the name of the testator ap-
peared as follows: "I, William Dinning, say this is my
last will and testament," and it was held to be sufficiently
signed. Judge Harrison, delivering the opinion, said:
"The signature is at the end of an apparently completed
instrument, and followed by only eight words, which do
not indicate a purpose to add anything more, or to take
anything from what had been written, but understood ac-
cording to their usual acceptation, constitute an emphatic
declaration that the signature was intended to authenti-
cate all that had preceded it, as the final consummation
of the testator's purpose."

The will under consideration is an attested will, and
the Virginia cases we have thus far referred to shed but
little light upon the question to be decided.

*Waller* v. *Waller, supra,* was also a case of an unattested
holograph will, but in the discussion of the case Judge
Allen goes into the whole subject very fully and with his
accustomed learning and ability, and his opinion sheds a
flood of light upon the case under consideration, even
though strictly speaking it may, with respect to attested
wills, be considered in some degree *obiter.* The will in
*Waller* v. *Waller* was a holograph will, in which the name
of the testator appears only in the exordium: "In the
name of God, amen, I, John Waller, of the county of Henry
and State of Virginia . . . being desirous to dispose
of all such worldly estate as it hath pleased God to bless
me with, I give and bequeath the same in manner follow-
ing." There was no end signature, it was unattested and
the will was rejected. Judge Allen, in his opinion, says:
"The act of 1840 requires written wills, whether of real
or personal estate, to be executed with the same solemni-
ties. That law governs this case, and relieves us from
many of the inconveniences growing out of the admission

of parol testimony to prove the testamentary intent. The will, whether of realty or personalty, is a statutory disposition of the property. The very paper must have been intended as and for the last will. Where the legal formalities are complied with, it stands as the last will, unless cancelled or revoked in the mode prescribed. If those formalities are wanting, parol testimony as to testamentary intent cannot supply the defect. It is the policy of the law to guard against setting up or destroying wills by such testimony. . . . The inquiries now to be made in regard to a paper offered for probate relate to the connection of the instrument with the testator so as to guard against forgery, the presence of those formalities required to establish its finality, and the sanity and freedom of the testator to show his knowledge of the character of the act, his capacity to do it, and the absence of all improper constraint and influence.

"In attested wills the connection between the testator and instrument is shown by the signing. Where the attesting witnesses prove he signed the instrument, or another in his presence by his direction signed it for him, the fullest evidence is obtained that the very paper produced is the one executed.

"The force of this evidence was somewhat impaired, when the courts held that it was not necessary the subscribing witnesses should see him sign, provided he acknowledged the signature to the paper they attested; as a mere acknowledgment was not so likely to be impressed on the mind as a formal execution in their presence.

"As the identity or connection of the instrument with the testator is the main fact to be determined by the proof of signing, there was not much danger to be apprehended in considering a signing of such a will at the top, the whole being in his handwriting, as a sufficient signing. Proof of the handwriting of itself connected the tes-

tator with the instrument, and that proof was aided by the acknowledgment of the testator in the presence of the subscribing witnesses. . . .

"The connection of the testator with the instrument being thus ascertained in the various modes adverted to, the finality of an attested will is established by the publication and attestation. No man publishes an instrument as his last will and testament, and calls on witnesses to attest the fact, until he has completed the act. The attestation must be annexed or subscribed to a complete instrument, and to which, when so subscribed, no additions can be made. To the act itself the law attaches testamentary intent that it is a concluded instrument, and if the party is under no restraint, acts freely, and is of sane mind, no further proof is requisite to sustain the instrument as a will; and no proof, other than a revocation in the mode prescribed, will be received to show a change of testamentary intent."

It would seem, therefore, from the opinion of Judge Allen, that the main fact of the connection of the testator with the instrument may be established, not only by the signature of the testator in the presence of subscribing witnesses, but by the mere acknowledgment in their presence of his signature; that such proof has been deemed sufficient in all the later cases; and that the finality of an attested will is established by attestation and publication; for, to repeat a pregnant sentence in the opinion of Judge Allen, "no man publishes an instrument as his last will and testament, and calls on witnesses to attest the fact, until he has completed the act. The attestation must be annexed or subscribed to a complete instrument, and to which, when so subscribed, no additions can be made." . . .

*Meads v. Earle,* 205 Mass. 553, 91 N. E. 916, 29 L. R. A. (N. S.) 63, was an appeal from a decree of the probate

court disallowing an instrument as the last will of Sarah J. Armstrong. The appellee requested the judge to rule as matter of law that the instrument was not signed by the testatrix and attested and subscribed in her presence by three competent witnesses in accordance with the requirements of the statute. The judge declined so to rule, and found as facts that so far as the will is in manuscript, the handwriting including her name or signature is that of Sarah J. Armstrong; that although she did not sign at the end of the instrument, yet when she wrote her name at the beginning of the will, it was with the intention that this act was a signing of the will; that independently of the attestation clause, she by words and conduct acknowledged and declared the will before the subscribing witnesses; and that the subscribing witnesses signed the attestation clause in her presence at her request and upon her acknowledgment and declaration that it was her will, although neither of them saw her signature. Having so found, he ruled that the document was signed, attested and subscribed within the meaning of the statute, and that it was a valid will." The supreme court said: "The case is before us upon his report. If the ruling requested by the appellee should have been given, a decree is to be entered affirming the decree of the probate court; otherwise a decree is to be entered reversing that decree, admitting the will to probate and remanding the case to that court for further proceedings." In the course of the opinion it is said: "There can be no doubt that she intended to make and supposed she had made a valid will. The care she took in writing the paper, in seeing to its attestation, and in putting and keeping it in a safe place shows that. She does not appear to have been advised or assisted by any one. She personally superintended the whole work. There was, however, no signature at the end; and it is contended by the contestants that the single

justice was not warranted in finding that she wrote her name at the beginning *animo signandi.*

"The finding must be interpreted to mean not simply that after writing her whole will she adopted as her signature her name as written previously in the exordium, but that at the time she wrote her name there she intended that it should stand as her signature to the will when completed, and that this intent continued to the end. Such a finding is perfectly consistent with what she did, and is not inconsistent with any act of hers. It explains any apparent incongruity in the evidence. It welds all the circumstances into one harmonious whole and is supported by the evidence."

It is to be borne in mind that when the attesting witnesses were called upon in this case five sheets of the will had been identified by the signature of the testatrix upon the margin of each page; and that in the presence of the witnesses she affixed her name for the sixth and last time to the margin of the will as and for her signature, and declared it to be her last will and testament. The jury by their verdict have declared that the will was duly executed, the judge of the probate court has approved their verdict, and we have no choice but to affirm the decision, unless we are prepared to hold that a literal signing at the foot or end of the instrument is necessary in all cases, and this we are not prepared to do.

We gather from our statute, from the decisions of this and other courts, and especially from the opinion of Judge Allen in *Waller* v. *Waller,* that in holographic wills proof of the handwriting establishes the identity of the paper and the connection of the maker of the will with it; that the finality of such will depends upon the signature, which must be made "in such manner as to make it manifest that the name is intended as a signature"; and that in the case of attested wills not in the handwriting of the testator,

the instrument is incomplete until attested by two witnesses in the mode prescribed by section 2514 of the Code; that when so attested it becomes a complete and final testamentary act; for, again to quote the language of Judge Allen, "the attestation must be annexed or subscribed to a complete instrument, and to which, when so subscribed, no additions can be made. To the act itself the law attaches testamentary intent, that it is a concluded instrument, and if the party is under no restraint, acts freely, and is of sane mind, no further proof is requisite to sustain the instrument as a will."

We are of opinion that the judgment complained of should be affirmed.

*Affirmed.*