# 𝔛𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## MRS. LEO H. FORREST v. MRS. LORETTA B. TURNER, ET ALS.

### April 22, 1926.

1. WILLS—*Signature—It Must be Manifest that Name was Intended as a Signature.*—A testator must sign his will "in such manner as to make it manifest that the name is intended as a signature." Code of 1919, section 5229. No mere intention or effort to dispose of property by will, however clearly and definitely expressed in writing, is sufficient unless the name is so placed that it is manifest from the whole writing itself that it was intended as a signature to the paper.

2. WILLS—*Signature—Place of Signature—Opening Clause.*—Although testator's name need not be at the end of a holographic will, the writing of the testator's name in the exordium or opening clause of the will is of itself not a signature to the will, as it does not indicate finality of intention to authenticate the concluded act of disposition of his property.

3. WILLS—*Finality of Testator's Intention.*—The finality of the testator's intention must appear from the face of the entire paper itself.

4. WILLS—*Holographic Will—Signature—Case at Bar.*—In the instant case the will offered for probate was written on one side of a single sheet, filling up the entire page; on the other side of this sheet appeared the testator's name and this annotation: "Will make out a regular will, should anything happen this is O. K." The testator was evidently a man of only a moderate degree of literacy. The entire writing, including the addendum, with the signature on the reverse page, was prepared as a continuous act and was written in consecutive order of composition. It was barely possible, but certainly not natural, for the testator to attempt to write his signature on the first sheet.

   *Held:* That the fact that the additional language and signature, written as they were on the reverse side of the same sheet of paper under the circumstances, were not written immediately at the top of the reverse page, but only on a portion of that page, should not be allowed to defeat the manifest intention of the testator to make and complete his will.

5. WILLS—*Signature—Each Case Governed by its Peculiar Circumstances.*—In determining whether the name of decedent appearing in a paper

alleged to be his last will was intended as his signature, each case must be governed by its peculiar circumstances.

6. Wills—*Courts not to Seek to Defeat the Testamentary Disposition of Property.*—The courts should not seek to defeat the testamentary disposition of his property, which a person plainly intended should take effect. The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether is common.

Errors to a judgment of the Hustings Court of the city of Portsmouth, refusing to admit a paper to probate as a will. Judgment for contestant. Proponent assigns error.

*Reversed and remanded.*

The opinion states the case.

*Herman A. Sacks* and *Jas. G. Martin & Bro.*, for the plaintiff in error.

*Vincent L. Parker, Crocker & Crocker* and *Earl W. White*, for the defendants in error.

Crump, P., delivered the opinion of the court.

In the month of December, 1924, Mrs. Leo H. Forrest offered for probate a paper writing purporting to be the holograph will of Joseph M. Tatem then recently deceased. Mrs. Forrest was the sole beneficiary under the paper presented as a will, and at the consequent hearing the parties who were the heirs and distributees of the deceased were made parties defendant. They contested the probate. The court, having heard evidence adduced by both sides, refused to admit the writing to probate as the last will and testament of Joseph M. Tatem; and upon the petition of the proponent a writ of error was awarded.

The writing offered as a will is as follows:

"This is to certify that I, Joseph M. Tatem, born on the 11th day of December, in the year of 1865, and being the son of John Wilson Tatem and Missouri A. Tatem, Portsmouth, Va., do hereby make the following will while I am in good health and the best sound mind for doing such responsible work. Therefore, should any question arise as to the truthfulness of the above as being absolutely true here written thereon by me the party of Joseph M. Tatem, party of the first part,

"June      , 1924.

"I leave to Mrs. Leo H. Forrest, now my housekeeper, the one whom I have always found upright honest in every respect, my best friend saved me many a dollar, at the time of my death if she is living again would say

$4,000 four thousand dollars, #8 & O. V. two houses, every thing I possess in the two houses and all money deposited in any banks in Portsmouth are Norfolk."

The foregoing was written on one side or page of a single sheet of small unlined pink note paper, filling up the entire page, the words in "Portsmouth are Norfolk" —meaning evidently in Portsmouth and Norfolk— being at the bottom of the page and practically on its very edge. As presented to the trial court this page was folded in its centre covering the writing, the folded sheet being half the size of the original sheet. This folded sheet was again folded in the middle so as to present a surface on each side one fourth of the original page. On the exterior of one of the half pages when first folded the following had been added by the writer,

which we reproduce as it appears on the document, thus:

When folded again back on the centre line, this writing and the signature were left on the outside of the paper as presented to the court. It does not appear when the folding was done, but it was presumed to have been done by the deceased, and this was probably correct. The little drawings were evidently on the paper at the time it was used. All the writing on both pages of the paper was done with a pencil.

The evidence shows that Joseph M. Tatem and his wife had been divorced from bed and board some years before his death, and he had subsequently made a settlement upon her under the terms of which she surrendered all interest in his estate.

The widow testified on the hearing but disclaimed all interest in the result of the proceedings. The proponent, Mrs. Leo H. Forrest, had been the housekeeper of the deceased for several years prior to his death, and he

evidently considered himself under great obligation to her.

The trial court having held that all portions of the paper writing offered, including the signature of Tatem, were in his own handwriting, we need not review the testimony as to that phase of the case; the evidence is sufficient to support the ruling of the court in that respect.

Did the lower court err in ruling that the paper was not sufficiently authenticated by the signature, and in refusing probate on that ground? That is the sole question before this court.

[1, 2] Since 1850 the Virginia statute has provided— now section 5229 Code of 1919—that a testator must sign the will "in such manner as to make it manifest that the name is intended as a signature."

No mere intention or effort to dispose of property by will, however clearly and definitely expressed in writing, is sufficient, unless the name is so placed that it is manifest from the whole writing itself that it was intended as a signature to the paper. See *Meany* v. *Priddy*, 127 Va. 84, 102 S. E. 470, in which case Judge Prentis refers to probably all of the preceding Virginia cases involving application of the statute. The name need not be at the end of the paper. The writing of the testator's name in the exordium or opening clause of the will is of itself not a signature to the will, as it does not indicate finality of intention to authenticate the concluded act of disposition of his property. It was so held in *Ramsey* v. *Ramsey*, 13 Gratt. (54 Va.) 664, 70 Am. Dec. 438, and again in *Roy* v. *Roy*, 16 Gratt. (57 Va.) 418, 84 Am. Dec. 696.

In *Warwick* v. *Warwick*, 86 Va. 596, 10 S. E. 843, 6 L. R. A. 775, the beginning words of the holograph will were: "I, Abram Warwick, Jr., of the county of Henrico,

declare this to be my last will, etc.," but the testator did not sign the will nor write his name anywhere else on the paper. The paper was folded and enclosed in an envelope which was sealed and endorsed: "My will —Abram Warwick, Jr." Probate was refused by the court as the endorsement on the envelope was plainly to designate the contents of the envelope and therefore could not be taken as a signature to the paper contained in it.

In *Meany* v. *Priddy, supra,* the paper was in the handwriting of the deceased, but was unsigned. It was found after her death in a sealed envelope upon which she had written: "Mrs. Virginia Deane Meany's last will, January 9-18." In line with the prior cases in Virginia the will was declared invalid for lack of signature.

The learned trial court in the instant case was of opinion that, since Tatem could possibly have signed his name at the bottom of the first page, although the space left was very little, or could certainly have signed at the top of the next page, but did not do either and apparently folded the paper and then wrote the words: "Will make out a regular will, should anything happen this is O. K.," and attached his signature, it was apparent that the signature was affixed to the memorandum as an endorsement to identify the unsigned paper rather than to affix the signature in completion of the document; that the case, therefore, was similar to the cases in which a memorandum had been endorsed on an envelope or separate piece of paper only to identify the unsigned paper writing, and was ruled by the decisions in such cases.

Cases in which holograph wills have been upheld, although the signature was not at the end of the writing, are *Perkins* v. *Jones,* 84 Va. 358, 4 S. E. 833, 10 Am.

St. Rep. 863, and *Dinning* v. *Dinning*, 102 Va. 467, 46 S. E. 473.

In *Murgmondo* v. *Nowland*, 115 Va. 160, 78 S. E. 600, the writing was an attested will and concluded as follows: "Witness my hand seal which I have set to this my will, consisting of six pages of paper, each of which bears my signature in the margin thereon, on this the _____day of March, 1910, at Richmond, Virginia.

."(Seal.)"

This was not filled out and not signed. The testatrix, in signing her name on the margin of the sixth and last page did so in the presence of witnesses; this signature on the sixth page was held sufficient to comply with the statute, and the witnesses, who had signed a proper attestation clause, were allowed to prove the signature in execution of the will.

In regard to the custody of the writing in the instant case, Mrs. Forrest testified as follows:

"A. He gave it to me and told me to take care of it; Mr. Joseph M. Tatem, and I did not think it was any good, and I carelessly threw it in a drawer, and when his brother came he told me get it so his brother could see it, and I carried it to him and then his brother read it to him, and he said that is what he wanted to carry out, his wish.

"Q. Did you see Mr. Tatem write that?

"A. Yes, sir.

"Q. Did you see him write the whole thing?

"A. Not all. I would never talk with him on the subject. I went in the kitchen, and he finished it out, and when I came in the sitting room he gave it to me.

"Q. Did anybody else write on that paper?

"A. No, sir.

"Q. After he had finished the paper what did he do?

"A. He gave it to me and told me take care of it, and

I put it in the bureau drawer and never even looked at it again until his brother came.

"Q. What was his brother's name?

"A. John W. Tatem.

"Q. You heard Mr. Joseph Tatem state that it was his will?

"A. His brother read it over and he said that was exactly what he wanted; 'see that you carry out my wishes.' "

And the testator's brother testified thus:

"Q. You say you showed that will to your brother?

"A. Yes, sir.

"Q. And what question did you ask him?

"A. He asked me to carry out his wishes, which I had promised him and told him I would. He told me to look out for his housekeeper and have his will probated.

"Q. Did he tell you which was his will?

"A. He said Mrs. Leo had it, and I asked Mrs. Leo if she had the will of Brother Joe. He said he had it wrote out on a piece of paper, and told her to get it, and she did, and I looked it over and read it to him, and asked if that was his will, and he said it was, and asked me to carry it out."

[3] This testimony referred to in argument for plaintiff in error was doubtless considered relevant to the issue upon the genuineness of the decedent's handwriting. It furnishes no aid, however, in reaching a conclusion as to the effect of the signature as made, for the finality of the testator's intention must appear from the face of the entire paper itself. In determining the question as to the final valid completion of the will, we can consider this evidence only in so far as it shows the immediate writing of the paper, its custody, and the source of its production for probate.

[4] The pertinent facts of this case, as they appear to us from the record after examining the original paper, which was brought up for our inspection, are:

The testator was evidently a man of only a moderate degree of literacy. This appears from the composition of the paper. He evidently intended to make his last will and to dispose of his poperty. The opening sentence shows that he was impressed with the solemnity of what he designates as "such responsible work." The entire writing, including the addendum with the signature on the reverse page, was prepared as a continuous act and was written in consecutive order of composition. The will is written on a single piece of paper, apparently picked up as the desire to write a will seized the testator. Commencing to write on one side of the paper, the unskilled scrivenor found that he had filled up that side so that nothing more could be added to it. The dispositive provisions of the will are on that side, yet they end in a manner not excluding the suggestion that something might be added. Upon a careful examination of the original paper, we find that it was barely possible, certainly not natural, for the testator to attempt to write his signature or add any thing in conclusion on that page, as the words on the last line almost touch the lower edge of the paper. The fact that the writer deemed it essential to add anything, or to sign his name only, is some evidence that he intended to make the will complete, and to do so he was obliged to write upon the other side of the piece of paper, or he thought so. Exactly why the addition and signature were made in the manner in which they appear upon the paper cannot now be ascertained. If there had been room for several more lines on the first page, the writer may have written there the additional words and signature. The writing being completed the writer

disposed of it in a manner displaying a manifest belief on his part that he had performed the "responsible work" undertaken by him, and had made a final testamentary disposition of his property, in accord with his wishes, and which was intended to take effect if not thereafter changed in form.

Should the fact that the additional language and signature, written as they were on the reverse side of the same sheet of paper under the circumstances here, were not written immediately at the top of the reverse page but only on a portion of that page, be allowed to defeat the fairly manifest intention of the deceased to make and complete his will? We think not. The case is not as clear as to the authenticity of the will as in *Dinning* v. *Dinning, supra,* but we may refer to what was said by the court in that case, viz:

"If under the construction placed, as seen, for nearly fifty years, upon it, the statute was designated to furnish a rule in respect to the signature, which would let in wills, though not signed at the foot or end, if signed in such manner as to afford internal evidence of authenticity equally convincing, then it would be difficult to conceive of a case coming more nearly within the contemplation of the statute than the will under consideration. The signature is at the end of an apparently completed instrument, followed by only eight words, which do not indicate a purpose to add anything more, or to take anything from what had been written, but understood according to their usual acceptation, constitute an emphatic declaration that the signature was intended to authenticate all that had preceded it, as the final consummation of testator's purpose."

The will in the instant case was written upon what might very well be termed as a scrap of soiled paper. The fact that the testator in turning to the reverse page

wrote the additional words and then affixed his signature should not be taken as determinative of the case; as necessarily showing that he had finished writing his will, and added the subsequent words merely as an indication that the unsigned writing on the other side was to be identified as his completed will.

[5] Each case must be governed by its peculiar circumstances. None of the cases decided by the Supreme Court of Appeals of Virginia furnishes a parallel with the instant case. In *Roy* v. *Roy*, 16 Gratt. (57 Va.) 418, 84 Am. Dec. 696, the will was written on the first and half of the second page of a full sheet of letter paper consisting of four pages; the paper was folded up in the form of a letter and the words "David M. Foy's Will" was endorsed on the back, being about the middle of the third page. It is very clear that such an endorsement was not intended as a *signature* at all. In the instant case the name is placed so as to manifest beyond question that it was intended as a signature: "Should anything happen this is O. K. Joseph M. Tatem." Why should not the testator be taken as intending by "this" *the foregoing*, or *what I have above written*, "and I therefore now sign it?" The cases in which a paper was apparently completed but unsigned, and then enclosed in an envelope and on the back of the envelope an endorsement made to indicate the contents of the envelope, are very different from the instant case. However the endorsement may be worded, and whether signed or not, there was an entire break in continuity of the act of will writing, and the endorsement was manifestly intended to indicate merely the contents of the envelope. Such were the cases of *Warwick* v. *Warwick, supra,* and *Meany* v. *Priddy, supra.* In the latter case Judge Prentis very properly held that the endorsement might raise a doubt whether the name was intended as

a signature, but that was not sufficient to authenticate the paper for the will must be signed in a manner to come within the requirement of the statute.

In the instant case the *animus testandi* is manifest, and our opinion is that the *animus signandi* is fairly clear. We think the subscription made by the testator, while out of its usual place, sufficiently appears to have been made by him as a signature to his last will and testament, and was so intended by him, when we consider the facts which we have recited and the meaning, intent and purpose of the words immediately above the signature.

[6] While the principles by which the court should be governed in cases similar to *Meany* v. *Priddy, supra,* are well settled and clear, we see no reason why they should be extended to cover such a will as we have in the instant case. We should not seek to defeat the testamentary disposition of his property, which a person plainly intended should take effect. *Gooch* v. *Gooch,* 134 Va. 21, 113 S. E. 873, and *Rice* v. *Freeland,* 131 Va. 298, 109 S. E. 186. On the contrary the courts are inclined to agree with a statement by the Court of Appeals of New York, referring to prior cases construing the statute of that State regarding the signature to a will, to-wit:

"The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common. Hence we think we have gone far enough, in the direction of rigid construction, and that the doctrine of certain authorities should not be extended, lest in the effort to prevent wrong we do more harm than good." *In re Field,* 204 N. Y. 448, 97 N. E. 881, also in 39 L. R. A. (N. S.) 1060, Ann. Cas. 1913 C, 842.

For the reasons above the judgment of the lower

court will be reversed, and the case be remanded to the end that the will may be admitted to probate, an administrator appointed, no executor being named in the will, and such further proceedings be had in the court of probate as shall be deemed proper.

*Reversed and remanded.*