# Richmond

## THE PRESBYTERIAN ORPHANS' HOME AND OTHERS
### v. MARK BOWMAN AND OTHERS.

November 14, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*George S. Harnsberger* and *Ethel Irwin Lineweaver*, for the appellants.

*John T. Harris* and *Herbert W. Wyant,* for the appellees.

HOLT, J., delivered the opinion of the court.

A writing which purports to be the last will and testament of Catherine Bowman was offered for probate to the clerk of the Circuit Court of Rockingham County, and was by him accepted. From his judgment an appeal was taken to the circuit court of that county, which was of opinion that its execution was fatally defective in that it was not signed as provided for by statute.

That statute, Code, sec. 5229, reads: "No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary. If the will be wholly in the handwriting of the testator that fact shall be proved by at least two disinterested witnesses."

When this will was executed Catherine Bowman was ninety-two years old, but of sound mind and disposing memory. On or about October 6, 1933, she asked O. L. Burtner, a neighbor and life-long friend, to prepare for her such a paper. This he did, and took his draft to his home where it was copied in longhand by his daughter Helen. It and the attestation clause are wholly in her handwriting, with the exception of the figure "6th," writ-

ten into the date line by Mr. Burtner himself. This new draft he took back to Miss Bowman, intending to have it in final form typewritten, but she said it was just what she wanted and insisted that it be executed then and there. She did then, in a manner hereafter noted, sign and her signature was properly witnessed. There is no suggestion of fraud or undue influence. If the subscription by the testatrix of her signature complied with the statute, then this will which embodies her wishes must be received.

It is made up of four sheets of paper, all uniform in texture, finish and appearance. Disposition of the entire estate is made on the first pages of the second and third sheets. Nothing is written upon the first sheet. This is the first paragraph on sheet two:

"I, Catherine Bowman of Mt. Clinton, Virginia, being of sound and disposing mind, do hereby make, publish and declare this to be my last will and testament, hereby revoking all wills by me at any time heretofore made."

This residuary clause appears at the end of the first page of sheet three:

"Ninth, I give and bequeath to Lynchburg Orphanage all the remainder of my property, both Real and Personal.

"Given under my hand this 6th day of October, 1933."

There is room at the bottom of this page for the signature of the testatrix, but not for the certificate of the subscribing witnesses. All of this appears in this form about the middle of the first page of sheet four:

"Subscribed by the testator and by us in her presence and in the presence of each other on the above mentioned date.

"Catherine Bowman
"O. L. Burtner, Witness
"Roy L. Frank, Witness."

This attestation clause and the words "witness" is in the handwriting of Helen Burtner.

Burtner then took it with him to his home and kept it until after Miss Bowman's death, when he produced it for probate on November 20th and in the supervisor's room

read it to Mark Bowman, a nephew of the testatrix, and to L. W. Swank, his brother-in-law. Mr. Bowman said that the sheets which went to make up the will were not then pasted together and that he remembered this because Mr. Burtner; as he read it to them put one page behind the other until he had finished. Mr. Swank also said that these pages were not pasted together.

When this evidence was introduced Mr. Burtner was recalled and testified as follows:

"3Q. Something was also said about the method of this paper's attachment, or the attachment of the several sheets. I will ask you first, whether all of these sheets were together at the time the will was read to Catherine Bowman?

"A. They were, and were attached together.

"4Q. Do you recall how they were attached together at that time?

"A. I think they were attached with a clasp. I don't remember now, but I think I had a clasp on them and they were clasped together when I handed them to the clerk of the court. I remember I saw him leaf them over.

"5Q. You say clasp. Do you recall what kind of clasp was used?

"A. They were clasped at that time—I made the confession a while ago that this was not the will or document that I intended for Miss Bowman to sign. I wanted to have it typewritten; and when she insisted on signing the paper, I took the precaution to paste the will together.

"MR. HARRIS: You did it when?

"WITNESS: Pasted the leaves together?

"6Q. Afterward, after it was signed. Now as I understand you, the paper was attached in some method, you don't recall just how, whether it was a clasp, or pin or how it was at the time she signed it?

"A. Absolutely so.

"7Q. And after it was done, you, thinking to make it more secure, pasted it together.

"A. Pasted it together. I will make this further state-

ment. That this is absolutely the will of this testator, nothing added, or nothing subtracted. I make this statement on my sacred oath.

"8Q. Mr. Burtner, you stated that you didn't remember how it was attached. I notice here on this paper, two holes. Do you know anything about when the holes were made in there?

"A. It may be I had fastened it with a pin. I am not sure. But I am sure that the papers were fastened together."

These sheets are now pasted together and in their upper left-hand corner are pin holes, one over the other, which seem to indicate that they were once pinned together. Burtner read the will to Swank and Bowman in the supervisor's office in Harrisonburg on the 20th of November, and said if there was no objection he would then offer it for probate. There was no objection and it was then and there presented to the clerk and accepted.

Bowman and Swank, testifying in the utmost faith, may have been mistaken. As Burtner read each page of the will, it would have been natural for him to fold over each sheet behind the unread pages. On the other hand, Burtner can not be mistaken in saying that he did paste these sheets together when Catherine Bowman insisted on executing the will in its manuscript form. He has either told the truth or has perjured himself. He has no interest in the result of this litigation. He was long known to the testatrix and was trusted by her. There is every reason to believe that he is a man of good character. Moreover, these sheets are now pasted together. That in all probability would not have been done after the will was left in the custody of the clerk, and so if Swank and Bowman are correct this pasting was done after the paper was read to them and before it was taken to him. We think it fair to conclude that these sheets were in some manner fastened together when Burtner took them to Miss Bowman and that the pasting was done at the time the will was executed.

The residuary clause at the bottom of page three makes it plain that we are dealing with a completed will. The certificate of the attesting witnesses is written by the hand that wrote the will and written with the same ink. The writer, Helen Burtner, when she spoke of the above mentioned date, must have had in mind the date which she had written on the preceding sheet, and the testatrix when she wrote her name under this inscription, "Subscribed by the testator," must have intended to sign in that capacity. Moreover, "in attested wills the connection between the testator and instrument is shown by the signing." *Waller v. Waller*, 1 Gratt. (42 Va.) 454, 465, 42 Am. Dec. 564.

All of this is to be taken in connection with the conclusion which we have reached, namely, that these several sheets at that time were in some manner fastened together.

In the *Waller Case* it was said: "The attestation must be annexed or subscribed to a complete instrument, and to which, when so subscribed, no additions can be made." The will itself must appear to be a complete instrument. This will does present that appearance. Its ninth and last article gives to the Lynchburg Orphanage "all of the remainder of my property both real and personal." Nothing follows but the signatures and the attestation clause. When it is said that this signature must be attached in such manner that "no additions can be made," we have a statement which if literally applied is unworkable. It probably has never occurred to a testator that his signature must be so attached as to prevent the insertion of a line between it and the testimonium.

In *Murguiondo v. Nowlan's Ex'r*, 115 Va. 160, 78 S. E. 600, the signature was on the margin of a will's last sheet and not at its end.

In *Forrest v. Turner*, 146 Va. 734, 133 S. E. 69, 72, the testator wrote his name on the back of a page on which his will appeared, near the top line and not under anything. See also, *Tredick v. Bryant* (Oct. 7, 1929), 269 Mass. 50, 168 N. E. 162; *Lucas v. Brown*, 187 Ky. 502, 219 S. W.

796; *In re Dutcher's Estate,* 172 Cal. 488, 157 P. 242; Schouler on Wills (6th Ed.), sec. 487. *In re Morrow's Estate,* 204 Pa. 479, 54 Atl. 313, 314, the court said: "While leaving a blank at the foot of the first page was imprudent, in that it afforded an opportunity for fraudulent practice, it certainly would not of itself invalidate the will." Note, 17 L. R. A. (N. S.) p. 354.

The attestation clause is no part of the will, and so the fact that the testator's signature appears after it is unimportant. *McCue* v. *Turner,* 252 Ky. 849, 68 S. W. (2d) 415; *Lucas* v. *Brown,* 187 Ky. 502, 219 S. W. 796; *Stone* v. *Holden (In re Norris),* 221 Mich. 430, 191 N. W. 238, 29 A. L. R. 884; *Younger* v. *Duffie,* 94 N. Y. 535, 46 Am. Rep. 156. All that is necessary is that it must appear on the face of the document that the parties signing did in fact intend to sign in the capacity of testator. This does appear in the attestation clause under which Miss Bowman's name is written.

A will may be written on more than one sheet of paper, and it is good practice to have the testator identify each sheet, but it is not necessary, and it is not necessary that the attesting witnesses sign each sheet or acquaint themselves with the contents of the will. *Dearing* v. *Dearing,* 132 Va. 178, 111 S. E. 286.

In *Savage* v. *Bowen,* 103 Va. 540, 49 S. E. 668, 671, Judge Harrison said: "In the matter of executing a will, the statutory requirements must be complied with, but substance must not be sacrificed to form, and the end of the law to the means used for attaining it."

It is perfectly true that some fraudulent provision might have been inserted above the attestation clause. It is still more certain that it has not been done. Judge Crump in *Forrest* v. *Turner, supra,* said: "We should not seek to defeat the testamentary disposition of his (testator's) property, which a person plainly intended should take effect." He then quotes with approval this statement of the law from *In re Field's Will,* 204 N. Y. 448, 97 N. E. 881, 39 L. R. A. (N. S.) 1060, Ann. Cas. 1913C, 842: "The

evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common. Hence we think we have gone far enough, in the direction of rigid construction, and that the doctrine of certain authorities should not be extended, lest in the effort to prevent wrong we do more harm than good." The patient is not helped by a remedy which carries him off.

■ Of course it must be manifest that the signature was intended as a signature. This in terms is a mandate of the statute, and many Virginia cases are to that effect. For reasons stated we think this is manifest here. Testatrix's purpose has been made plain beyond all question. Nothing but stark necessity should ignore it, and as Judge Crump observed in *Forrest* v. *Turner,* "each case must be governed by its peculiar circumstances." Catherine Bowman's will should be admitted to probate. The order of the court below must be reversed.

*Reversed.*