# Richmond

## DR. J. M. HAMLET, JOHN M. HAMLET, JR. AND MRS. B. K. WINSTON v. JOHN CHAPPELL HAMLET.

January 15, 1945.

Record No. 2858.

Present, All the Justices.

The opinion states the case.

*M. A. Hutchinson, Spotswood Keene, E. C. Wingfield* and *Paxson, Williams & Fife*, for the plaintiffs in error.

*James G. Martin & Son* and *Watkins M. Abbitt*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Dr. Robert Edward Hamlet, a dentist and a resident of Appomattox county, died in the latter part of November, 1943. For a number of years he had lived alone in a small three-room cottage at Pamplin. Shortly after his death, his son and only surviving child, John Chappell Hamlet, his nephew, John M. Hamlet, Jr., and Earl Mattox, who had married one of the decedent's nieces, found an envelope in a black satchel in a closet of the room in which Dr. Hamlet died. On the front of this envelope, in the handwriting of the decedent, are these notations: "My last Will is enclosed here, written with Pencil, on Nov. 13th—1941. My Will is in grip in closet." "Will, &." On the back of the envelope, and likewise in the handwriting of the decedent, the words "My Will" are written four times.

The envelope contained a single-page typewritten document, dated October 7, 1929, and purporting to be the will of the decedent, and two holographic writings dated November 13, 1941, and July 11, 1943, respectively.

The first paragraph of the typewritten instrument reads as follows:

"I, Dr. Robert Edward Hamlet of Farmville, Virginia, being of sound and disposing mind do hereby make, publish

and declare this to be my last will and testament, hereby revoking any other will by me at any time made."

Then follow six paragraphs directing the payment of the decedent's debts, disposing of his estate, and appointing executors. Some of these items bear pencil notations indicating that they had been stricken out in whole or in part or considerably altered.

The paper concludes thus:

"Given under my hand this the 7 day of October, 1929.
      (Signed) "Dr. Robert Edward Hamlet".

(Signed) "Mrs. Garland Wilkinson
      "Gordon Paulett
      "A. C. Paulette"

The probate of this writing was refused because the usual attestation clause is lacking, and it appeared from the testimony of the two surviving attesting witnesses that the instrument had not been signed or acknowledged by Dr. Hamlet in the presence of two witnesses, all being "present at the same time," as required by the statute. Code, sec. 5229. All of the parties agree that this ruling of the trial court was correct.

The main controversy concerns the action of the trial court in declining to admit to probate the two-page holographic writing, dated November 13, 1941, and likewise found in the envelope. We quote so much of the instrument as is material to the issue before us. The first two paragraphs read as follows:

"Having had my other Wills examined by a Lawyer who stated that they contained some flaws, & at his suggestion & advice I am hereby writing this one in my own handwriting, that is my wish and Will to be carried out, on this Thirteenth (13th) day of November 1941.

"I, Dr. Robert, Edward Hamlet, now of Pamplin, Va. being of sound & disposing mind do hereby make, Publish & declare this to be my last Will & Testament, hereby Revoking any other Will, by me at any time made."

After directing the payment of his "just debts," the writer disposes of his real and personal estate between his brother, Dr. J. M. Hamlet, his son, John Chappell Hamlet, his nephew, John M. Hamlet, Jr., and other nieces and nephews. Also included among the beneficiaries are certain members of the Cumbey family and others.

The writing closes with this paragraph:

"This Will is in my own handwriting, done by me of Good & Sound mind, on this 13th day of November 1941. I appoint John Hamlet Jr. as Administrator without Bond."

On the back of the second page is this notation: "My last Will."

This document is not signed at the end in the usual manner, and unless the insertion of the name at the beginning of the second paragraph was intended as a signature, it is unsigned.

The third paper found in the envelope is on a single sheet of paper, is likewise written with pencil in the handwriting of Dr. Hamlet, and is unsigned. On one side of the sheet are these words:

"As stated elsewhere I want the Cumbey to have full & unencumbered right to the Home in which they now live, as my last Will & Wish regardless of how stated in my Will, but with boundries as stated in my Will, & as stated in my Will, also, in regard the Well, but not to be sold, rented, or given away.

"I appoint John Hamlet Jr. of Charlottesville as administrator without Bond, & John don't fail to give the Cumbeys full possession as stated above.

"July 11th 1943."

On the reverse side of this sheet are these words:

"In regard the Cumbey Home, They have been so good to me.  My Will is in Grip in Closet & $100.00 in Cabinet in the other room."

The evidence relating to the probate of the documents just described was heard *ore tenus* by the trial court on December 15, 1943, at the conclusion of which it ruled, for the reasons stated, that the typewritten instrument should not be probated.  The court took under consideration whether the other two writings, dated November 13, 1941, and July 11, 1943, respectively, should be admitted to probate.  Pending the court's consideration of the matter, certain other writings came into the possession of John M. Hamlet, Jr., who was named in the instrument of November 13, 1941, as "Administrator."  Each of these is written with pencil, wholly in the handwriting of Dr. Hamlet.  The first of these writings is on a single sheet of paper, and reads as follows:

*"This must be carried out,*
"John without fail
"Regardless of *anything* contained in my last Will, it is my wish & Will that Mrs. Sidney Spencer of Buckingham Co., is to receive, or get, first of all, a $500.00, hundred Dollar Government Bond $500.00 or its equivalent, without fail, for she is the only one who has offered me a place to stay, or a Home, regardless of how humble, & to do what she can, in her feeble way, for me.  Something no one else has done, & I truly appreciate it, for I am Sure that very few, or *any one*, ever lived, or died, a more miserable life, or death, without any one near them, to do a single thing for them.

"(Signed)   Dr. R. E. Hamlet
"June 1st 1943."

On the back of this sheet are these words:

"This is no good, (Void) unless attached to the Original Will.

"(Signed)   Dr. R. E. Hamlet
"Sept. 4th 1943."

This paper was found by Mrs. John Chappell Hamlet on November 28, 1943, among some Christmas cards and letters, in a small filing case in the back room. Mrs. Hamlet showed the paper to her husband, and both of them testified that it was called to the attention of John M. Hamlet, Jr., prior to the hearing on December 15. John M. Hamlet, Jr., testified that the paper was not called to his attention until after the hearing. In any event, it was not offered for probate until the second hearing which took place on January 28, 1944.

In the meantime John M. Hamlet, Jr., had found, in an appointment book on top of Dr. Hamlet's desk, the last of the purported testamentary writings. It is unsigned, written with pencil in the handwriting of Dr. Hamlet, and reads as follows:

"I want the Cumbeys to have the Home in which they now live in fee simple, with full right & uncumbered, regardless of how stated in my last Will, but with boundries as described in Will & with perfect right given to parties living in houses across the road to the Water in the Well at any & all times, as also stated in my last Will
"July 8th 1943".

After the interested parties had been convened and the further evidence heard *ore tenus,* the trial court took the view that none of the papers offered should be admitted to probate. This holding was based upon the view that the instruments dated November 13, 1941, July 8, 1943, and July 11, 1943, were not "signed" as required by the statute. Code, section 5229.

The court also ruled that while the instrument dated June 1, 1943, was signed by Dr. Hamlet, the notation on the

reverse side, dated September 4, 1943, and likewise signed, expressly provided that this writing was void "unless attached to the Original Will," and that according to the uncontradicted evidence it was not attached to the instrument dated November 13, 1941, which the appellants contended is the "Original Will" referred to, or to any other purported will.

The material part of Code, section 5229, is as follows: "No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; * * * ."

This statute has been before this court in numerous cases. Minor on Real Property, 2d Ed., section 1160, pp. 1548, 1549, correctly states the rule deducible from our decisions: "Under the statute it is essential that a holograph will, like any other, be signed by the testator 'in such a manner as to make it *manifest* that the name is *intended as a signature;*' and therefore, in the absence of any affirmative evidence on the face of the paper that it is intended as a signature, the testator's name appearing at the commencement or in the body of the will is not a sufficient signature." See *Ramsey* v. *Ramsey*, 13 Gratt. (54 Va.) 664, 670, 70 Am. Dec. 438; *Warwick* v. *Warwick*, 86 Va. 596, 603, 10 S. E. 843, 6 L. R. A. 775.

In *Ramsey* v. *Ramsey, supra,* the holographic paper commenced: "I, Thomas Ramsey of Charlotte, do hereby make my last will and testament in manner and form following:" After directing the payment of his debts, and disposing of his estate, the paper concluded by appointing an executor and stating the intention of "hereby revoking all other and former wills or testaments by me heretofore made, this sixteenth of July, 1855." It was held that the insertion of the author's name in the opening paragraph was not a proper signature, and hence the writing should not have been admitted to probate by the lower court.

In *Warwick* v. *Warwick, supra,* the holographic writing began, "I, Abraham Warwick, Jr., of the county of

Henrico, declare this to be my last will and testament," and undertook to dispose of the author's estate. The paper was not otherwise signed, and was folded and enclosed in an envelope marked "My Will—Abraham Warwick, Jr." We held that neither the insertion of the name at the beginning of the instrument, which was denominated "an equivocal act," nor the signature on the back of the envelope, complied with the statute. It was there said (86 Va., at page 603): "The signing required by the statute must manifestly appear to be intended as a signature from the face of the instrument, which must appear, by internal evidence, equally convincing as the signing at the foot or end; that it must be manifest. The finality of the testamentary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible either to prove or disprove it."

▪█ It is true that we have held that the signature need not appear at the foot or end of the instrument, provided the paper shows on its face that the name placed in the writing was intended as a signature.

In *Dinning* v. *Dinning*, 102 Va. 467, 46 S. E. 473, the concluding sentence was: "I, William Dinning, say this is my last will and testament." It was held that the name was intended as a signature and that this intent was not destroyed by the addition of the last eight words.

In *Murguiondo* v. *Nowlan*, 115 Va. 160, 78 S. E. 600, a typewritten will, consisting of several sheets of paper, was not signed at the end in the usual place, opposite the word "Seal" and intended for the signature. The testator affixed her signature to the margin of the last page, "nearly opposite the end of the will," in the presence of the attesting witnesses. It was held that the instrument had been properly signed.

In *Forrest* v. *Turner*, 146 Va. 734, 133 S. E. 69, a will was written on one side of a single sheet of note paper and filled the entire page, leaving no room for the signature. It bore the testator's signature on the reverse side, which was held to be sufficient.

In *Presbyterian Orphans' Home* v: *Bowman*, 165 Va. 484,

182 S. E. 551, a non-holographic will was signed by the testator at the end of the attestation clause and just ahead of the signatures of the attesting witnesses. This was held to be a sufficient signature.

But, as was said in *Forrest* v. *Turner, supra* (146 Va., at page 745), there must be a concurrence of the *animus testandi* and the *animus signandi*—that is, the intention to make a will and the intention to sign the instrument as and for a will. And as Judge Prentis pointed out in *Meany* v. *Priddy,* 127 Va. 84, 85, 102 S. E. 470: "No mere intention or effort to dispose of property by will, however clearly and definitely expressed in writing, is sufficient; such purpose must be executed in the only manner authorized by the statute, that is, the writing itself must be authenticated by the signature of the decedent. It is not sufficient to raise a doubt as to whether his name is intended to authenticate the paper which is propounded as a will, for, to use the explicit language of the statute, it must be signed 'in such manner as to make it manifest that the name is intended as his signature,' and unless so signed it is not valid."

The appellants do not dispute these principles, but their contention is that the writing of November 13, 1941, shows on its face that the name "Dr. Robert Edward Hamlet" was placed at the beginning of the second paragraph as a signature to the instrument. They stress the fact that the name is in the second and not in the opening paragraph. We are not impressed with this argument. The first paragraph is merely the author's explanation for rewriting his will. The second paragraph, in which the name is inserted, is that usually employed in the commencement of a will, and we have several times held that the placing of the name there does not of itself indicate that it was intended as a signature. *Ramsey* v. *Ramsey, supra; Warwick* v. *Warwick, supra.*

It is next said that the insertion of the name in the second paragraph was intended as a signature because the writing consumes the entire second page, leaving insufficient space for a signature. This argument would have been more ap-

propriate if there had been a signature on the back of the second page, or on a third detached page. Compare, *Forrest* v. *Turner, supra.*

The next to the last sentence of the writing is: "This Will is in my own handwriting, done by me of Good & Sound mind, on this 13th day of November 1941." It is argued that the word "done" means concluded or ended, and denotes a finality to the writing even though there be no signature at the end. In our opinion it is more likely that what the author meant was that the act of reducing his testamentary wishes to writing was "done"—that is, carried out or performed by him—while he was in "Good & Sound mind." In other words, his purpose was to declare his soundness of mind rather than his intent to authenticate or sign the instrument.

We find nothing on the face of the paper to indicate that the insertion of the author's name at the beginning of the second paragraph takes it out of the rule laid down in *Ramsey* v. *Ramsey, supra,* and *Warwick* v. *Warwick, supra.*

On the contrary, we think there are indications in the paper that the name was not placed there for his signature. Except for the change of his place of residence from Farmville to Pamplin, the language used in the second paragraph, in which the appellants say the name was intended as a signature, is the same as that employed in the opening paragraph of the typewritten will, which Dr. Hamlet knew must be signed and which he in fact did sign at the end.

Again, in the opening paragraph he states that his "other Wills" had been "examined by a Lawyer who stated that they contained some flaws, & at his suggestion & advice I am hereby writing this one in my own handwriting, * * * ." As the trial court, in its written opinion, aptly said: "Certainly no attorney would advise him to sign a will in that manner."

Then, too, the fact that he was careful to sign the writings of June 1 and September 4, 1943, although they were in his own handwriting, would indicate that he appreciated the necessity for his signature.

Furthermore, the writing indicates that the author was a man of business experience, and one who had accumulated considerable real and personal property. He disposes of his "farms in Prince Edward County," his "two houses & lots on Pine Street" in Farmville, and his "Real Estate at Pamplin, Va." He is bound to have known that the instruments by which he acquired these various properties were signed at the end in each instance by the former owner. It is hardly likely that he would have thought that an instrument such as a will, in which he was disposing of all of these properties, should have been executed in a less formal and entirely dissimilar manner.

In our opinion, the trial court correctly held that the instrument of November 13, 1941, was not signed in the manner required by the statute. Code, sec. 5229. While the *animus testandi* (the intention to make a will) is clear, the necessary *animus signandi* (the intention to sign) the instrument relied on is lacking. See *Forrest* v. *Turner, supra; Meany* v. *Priddy, supra.*

It is next contended that even though the paper of November 13, 1941, was not properly signed in the manner required by the statute, yet the writing dated June 1, 1943, which was properly signed, "constituted or effected [a] republication" of the earlier instrument.

It is, of course, true that a duly executed codicil may have the effect of establishing a will which has not been duly executed. *Hatcher* v. *Hatcher,* 80 Va. 169; Graves on Real Property, sec. 86. But, in order to accomplish this, the will sought to be "republished" must be clearly identified, and, if the codicil is to be effective upon a condition, such condition must be met.

In the case at bar there is nothing to indicate that the writing of November 13, 1941, is the "Original Will" referred to in the writing of June 1, 1943. Moreover, on the reverse side of the sheet bearing the writing of June 1, 1943, there is the plain and unequivocal direction and condition, signed by Dr. Hamlet and dated September 4, 1943, that,

"This is no good, (Void) unless attached to the Original Will."

As has been pointed out, when found, the writing of June 1, 1943, was not attached to that of November 13, 1941. It was not in the envelope or "grip" which contained the instrument of the earlier date. It was even found in another room.

The appellants lay much emphasis on the fact that there are marks on the two papers which, they say, indicate that the writings had been attached by a clip and folded together. But the trial court who saw and heard the witnesses testify, and itself examined the documents, found this issue of fact against the appellants. From our inspection of the papers we cannot say that this finding is wrong.

But even if it be assumed that the writing of November 13, 1941, is the "Original Will" referred to in the later instrument, and that the two were at one time attached and folded together, they were not so at the time of Dr. Hamlet's death, which alone would have satisfied the condition upon which the efficacy of the codicil was based.

On the whole we find no error in the judgment complained of, and it is

*Affirmed.*

BROWNING, J., dissenting.