# Richmond

## Wilbur C. Hall, Administrator, etc. v. J. K. Brigstocke, et al.

January 16, 1950.

Record No. 3560.

Present, All the Justices.

The opinion states the case.

*Wilbur C. Hall, Charles Pickett* and *James Keith*, for the appellants.

*E. E. Garrett* and *Gardner L. Boothe*, for the appellees.

GREGORY, J., delivered the opinion of the court.

Roberta Leckie Rittenhouse died on December 9, 1946, at the age of 84 years. No will was found and it was believed that she died intestate. E. N. Bradfield qualified as administrator of the estate and proceeded to collect the assets amounting to approximately $89,000, and to administer the same. The deceased left as her heirs at law, Elizabeth Claggett Meade, a sister; Thomas H. Claggett, a brother; and Mary Gray Lewis, Elizabeth C. Stork, and C. Warner Stork, Jr., children of a deceased sister. Elizabeth Claggett Meade died before receiving her distributive share of said estate which was paid over to her personal representative. Thomas H. Claggett received his distributive share but has since died testate, and E. N. Bradfield has duly qualified as the executor under his last will and testament. The said Mary Gray Lewis, Elizabeth C. Stork, and C. Warner Stork, Jr., are beneficiaries under the will of Elizabeth Claggett Meade, and Mary Gray Lewis and Elizabeth C. Stork are the principal beneficiaries under the will of Thomas H. Claggett. E. N. Bradfield, administrator of Roberta Leckie Rittenhouse, has filed his final account, but neither the estate of Elizabeth Claggett Meade nor of Thomas H. Claggett has yet been disbursed.

Some time in the autumn of 1947 a paper purporting to be the last will and testament of Roberta Leckie Rittenhouse was discovered among her effects. It bore date of October 13, 1946, and was written wholly in her own handwriting. This paper was duly probated before the clerk of the Circuit Court of Loudoun county on January 2, 1948, and Wilbur C. Hall qualified as administrator d.b.n.c.t.a., and immediately instituted a suit in chancery against those who had taken, under the statute of descents and distributions, the estate of Roberta Leckie Rittenhouse. It was alleged that the distribution made by E. N. Bradfield, administrator of her estate, was erroneously made to her heirs at law, that the legatees under her will are entitled to her estate, and that the funds in

the hands of J. K. Brigstocke and the Peoples National Bank of Leesburg, as executors of the estate of Elizabeth Claggett Meade, and those funds in the hands of E. N. Bradfield as executor of the estate of Thomas H. Claggett, should be impressed with a trust in favor of the named legatees under the after-discovered will of Roberta Leckie Rittenhouse, and that such trust be enforced.

Demurrers were filed to the bill by the defendants in which it was asserted that the paper in question was not the last will and testament of Roberta Leckie Rittenhouse. The cause was heard on the bill and said demurrers on the 30th day of December, 1948, and the court sustained the demurrers, thereby holding the will invalid, and dismissed the bill. It is from the decree sustaining the demurrers and dismissing the bill that this appeal has been granted.

The position was taken in the petition for appeal that after the will had been admitted to probate it could not be collaterally attacked as was sought to be done by the defendants in these proceedings. *Avant* v. *Cook*, 118 Va. 1, 86 S. E. 903, and the subsequent cases following that case were cited, sustaining the proposition that the sentence of a court of probate of competent jurisdiction, admitting a will to probate, cannot be denied in any collateral proceeding touching the will, that its validity can be tested only by resorting to the means provided by law for that specific purpose. However, at the bar of this court, counsel waived this point and agreed that the case should be decided upon its merits.

It is too well settled to require citation of authority that an equity court has no general jurisdiction to admit wills to probate or to hear and determine contests concerning their validity; that the judisdiction arises solely by statute and that a judgment of probate cannot be collaterally assailed. (*Tate* v. *Chumbley, post,* p. 480, 57 S. E. (2d) 151.)

Here, the bill of complaint was founded solely on the validity of the will. The demurrer denied its validity, and the cause was heard upon the issue made by the bill

and demurrer, namely: Was the will a valid one? This procedure, while to some extent irregular, was substantially a compliance with Code, section 5259, where it, in part, is said: "After a sentence or order under this section, or under section 5249, a person interested, who was not a party to the proceeding, may proceed by bill in equity to impeach or establish the will, * * *".

The parties have treated this case as a proceeding to try the issue *devisavit vel non*, have had their day in court, and have had a fair trial on the only issue that could have been raised if there had been a strict, technical and seasonable contest of the order of probate under Code, section 5259. No one has been prejudiced by the procedure and both sides are estopped to question it. The procedure is not a collateral attack on the order of probate. It is, in all of its essentials, the same as that provided for under section 5259, therefore the jurisdiction of the trial court cannot be successfully assailed. *Avant* v. *Cook*, 118 Va. 1, 86 S. E. 903, and the cases that have followed it are not applicable here.

The will in question, which was written wholly in the handwriting of the supposed testatrix, is in the following words and figures:

"Roberta Leckie Rittenhouse

Written by myself October 13th 1946

My Will

I leave to my Cousin James Bradshaw Beverley
$5,000

I leave to my Cousin, John Gray Beverley
$5,000.00

I leave to my dear friend, Mrs. Anna F. Rogers
$20,000

I leave to my kind friend Mr. Nevil Bradfield
$2,000

I leave the rest of my money which I wish
given to St James Episcopal Church Leesburg
Loudoun Co Virginia

> My two diamond Rings I leave to Westwood
> Beverley Byrd—
> My gold Bracelet To Go to Mrs. Mary Gray
> Lewis
> The few things I have left to be given to
> Mrs Harry F Byrd
> This is My last Will and Testament"

The attack made upon the will is that it was not executed in accordance with the statute, Code, 1942 (Michie), section 5229. That section provides that "no will shall be valid unless it be in writing and signed by the testator or by some other person in his presence and by his direction *in such manner as to make it manifest that the name is intended as a signature* * * *. If the will be wholly in the handwriting of the testator, that fact shall be proved by at least two disinterested witnesses." (Italics supplied.)

Lately we have had occasion to construe again this statute and to refer to most of the cases and discuss them. See *Hamlet* v. *Hamlet*, 183 Va. 453, 32 S. E. (2d) 729, and *McElroy* v. *Rolston*, 184 Va. 77, 34 S. E. (2d) 241. In the former case Mr. Justice Eggleston quoted from Minor on Real Property, 2nd Ed., section 1160, pp. 1548-1549, where the author states that under the statute it is essential that a holograph will be signed by the testator "in such a manner as to make it manifest that the name is intended as a signature", and that in the absence of any affirmative evidence on the face of the paper that it is intended as a signature, the testator's name appearing at the commencement or in the body of the will is not a sufficient signature. As support for the proposition *Ramsey* v. *Ramsey*, 13 Gratt. (54 Va.) 664, 670, 70 Am. Dec. 438, and *Warwick* v. *Warwick*, 86 Va. 596, 603, 10 S. E. 843, 6 L. R. A. 775, are cited.

In the *Hamlet Case* we reiterated the proposition that the signature to a will need not appear at the foot or end of the instrument provided the paper shows on its face that the name placed in the writing was intended as a signature. See *Dinning* v. *Dinning*, 102 Va. 467, 46 S. E. 473; *Mur-*

*guiondo* v. *Nowlan,* 115 Va. 160, 78 S. E. 600; *Forrest* v. *Turner,* 146 Va. 734, 133 S. E. 69, and *Presbyterian Orphans' Home* v. *Bowman,* 165 Va. 484, 182 S. E. 551.

In the *Hamlet Case* we held that the will was not signed by the testator in such a manner as to make it manifest that the name was intended as a signature and therefore that the testator's name appearing at the commencement or in the body of the will was not sufficient. The paper in that case is clearly distinguishable from the paper we are now considering.

In *McElroy* v. *Rolston, supra,* the testatrix's name appeared at the beginning of the instrument in this fashion:

"June 6, 1926
Alice Wright   Mt Clinton Va
This satment is written buy
my hand and it is as what I wont
done with My Estate after my death
* * *".

Mr. Justice Spratley, speaking for the court, again reviewed the Virginia cases in a comprehensive opinion, and concluded that the testatrix had not signed her name in such a way as to make it appear from the face of the paper that she intended such signing as a signature. Accordingly, the court held that the paper had not been signed in accordance with the statute. The court (184 Va. 82) quoted from *Warwick* v. *Warwick, supra* [86 Va. 596, 10 S. E. 843], this language: "The signing required by the statute must manifestly appear to be intended as a signature from the face of the instrument, which must appear, by internal evidence, equally convincing as the signing at the foot or end; that it must be manifest. The finality of the testamentary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible either to prove or disprove it."

The *McElroy Case* is also unlike the one at bar. The will here, as already shown from the will itself, was not signed at its end. It begins "Roberta Leckie Rittenhouse

Written by myself    October 13th 1946
My Will."
Then follows four money legacies.  These legacies are very similar in language.  For instance, "I leave to my cousin, James Bradshaw Beverley", and again, "I leave to my cousin, John Gray Beverley", and "I leave to my dear friend Mrs. Anna F. Rogers", and again "I leave to my kind friend Mr. Nevil Bradfield".  They all denote finality.  They are expressed as well as could be.  She separated each legacy from the other by drawing a line between them.  The language is clear, and there can be no doubt of her meaning.

After the specific money legacies, she leaves the rest of her money to St. James Episcopal Church.  Then she leaves two diamond rings to a friend, and a gold bracelet to another.  Then follows the residuary legacy, other than money, to another friend.  The paper concludes, "This is my last will and testament".  There was sufficient room at the bottom of the will, as is disclosed from an inspection of the original, for the testatrix to have signed there.

■  The statute, section 5229 of the Code, does not require that a will be subscribed, that is, it does not require that it be signed at the end or bottom of the paper.  It only requires that it be signed in such manner as to make it manifest that the name was intended as a signature.

■  The will itself is sufficient to show that the name was manifestly intended as a signature.  It shows upon its face the finality of the instrument and the intent of the testatrix to make a will, and we think it also shows the manifest intent of the testatrix to sign as required by the statute.  It is a complete document which disposes of all of the testatrix's property and contains no blanks or anything that would indicate that it was not her last will and testament.  And while the name appears at the top of the paper, we think that the language of the will shows quite clearly that it was intended as her signature.  When the last sentence of the will, "This is my last will and testament", is considered with the first paragraph, it is manifest that she intended her name

as a signature to her will. If we transpose the language of the first paragraph we would have, "My will, written by myself, October 13, 1946. Roberta Leckie Rittenhouse", and if we consider this with the last sentence of the will, "This is my last will and testament", the conclusion is inescapable that her name was intended as a signature under the statute. These are some of the elements which differentiate this case from the *Hamlet* and *McElroy Cases*.

The decree of the trial court is reversed, and a decree will be entered here upholding the paper writing as the valid last will and testament of Roberta Leckie Rittenhouse.

*Reversed and remanded.*