# PELHAM G. SLATE, ET AL.

## V.

# EDWARD B. TITMUS

Record No. 881365

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting and Lacy, JJ.

---

\* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Frank M. Slayton (Vaughan & Slayton,* on brief), for appellants.

*Lesley I. B. Schless (J. David Meade, Jr.; McGuire, Woods, Battle & Boothe,* on brief), for appellee.

Justice Stephenson delivered the opinion of the Court.

The question presented in this appeal is whether a holographic writing was signed by the testator as required for a valid will by Code § 64.1-49.

In October 1987, Garland B. Slate told his nephew-in-law, Edward B. Titmus, where Titmus could find Slate's will if anything happened to Slate. Slate died on December 25, 1987. Several days later, Titmus found a sealed envelope at the place Slate had described. On the front of the envelope, in Slate's handwriting, was the following:

Will of Garland B. Slate
Atten: Edward B. Titmus

Within the envelope was a document, entirely in Slate's handwriting, that reads as follows:

I, Garland B. Slate, Route 3-Box 456 Petersburg, Va. do hereby declare this to be my last will and testament.

I.  I give and devise and bequeath to Edward B. Titmus all of my estate, both real and personal where ever situated.

II.  I appoint Edward B. Titmus the executor of this my last will and testament, and desire that no security be required of him as such.

Given under my hand this 25th day of October 1986.

Titmus first offered the writing for probate as Slate's will before the Clerk of the Circuit Court of Dinwiddie County. The Clerk declined to probate the instrument, opining that the court should make the decision whether the writing was a will.

Titmus thereafter initiated a probate proceeding by convening all of Slate's heirs-at-law. *See* Code §§ 64.1-80 to -84. The trial court ordered probate of the writing as Slate's "true last will and testament," and Slate's heirs-at-law appeal.

Limiting its consideration to the "four corners" of the document, the trial court stated the following:

Mr. Slate's signature in the exordium . . . stating that this is "to be my last will and testament" combined with the final words, "Given under my hand this 25th day of October 1986", clearly show that the instrument was signed "in such a manner as to make it manifest that the name is intended as a signature . . .", Code 64.1-49. Mr. Slate makes a full and unequivocal disposition of his entire estate which in no way lacks finality.

Code § 64.1-49 provides, *inter alia*, that "[n]o will shall be valid unless it be . . . signed by the testator . . . in such manner as to make it manifest that the name is intended as a signature." This provision has remained unchanged since the General Assembly first enacted the statute in 1850.

Significantly, the statute does not specify where the signature shall be placed in the writing. While placing one's name at the end of the instrument may be the best and clearest way of signing a will, we have said repeatedly that the signature does not necessarily have to appear at the foot or end of the writing. *See, e.g., Payne* v. *Rice*, 210 Va. 514, 517, 171 S.E.2d 826, 828 (1970); *Hall* v. *Brigstocke*, 190 Va. 459, 466, 58 S.E.2d 529, 533 (1950); *McElroy* v. *Rolston*, 184 Va. 77, 83, 34 S.E.2d 241, 243

(1945); *Hamlet v. Hamlet*, 183 Va. 453, 461, 32 S.E.2d 729, 732 (1945); *Dinning v. Dinning*, 102 Va. 467, 469, 46 S.E. 473, 473-74 (1904); *Warwick v. Warwick*, 86 Va. 596, 602-03, 10 S.E. 843, 845 (1890); *Ramsey v. Ramsey*, 54 Va. (13 Gratt.) 664, 670 (1857).

■ To meet the statute's requirement, however, it must appear unequivocally from the face of the writing that the person who writes his name therein intends it as his signature. *Payne*, 210 Va. at 517, 171 S.E.2d at 828. Indeed, in *Ramsey*, the first case in which we construed the statute, we said that the statute "recognizes no will as sufficiently signed unless it appears affirmatively from the position of the signature, as at the foot or end, or from some other internal evidence equally convincing, that the testator designed by the use of the signature to authenticate the instrument." 54 Va. at 670; *accord Warwick*, 86 Va. at 601, 10 S.E. at 845.

Slate's heirs-at-law primarily rely upon *Payne, McElroy, Hamlet, Warwick*, and *Ramsey* for the proposition that Slate's writing is not a valid will. The writings at issue in each of these cases, however, clearly lacked sufficient internal evidence to manifest that the testator intended his name as his signature. Moreover, most were incomplete and lacked the finality required of a valid will.

■ The writing in the present case, however, is more akin to those in *Hall* and *Dinning*. In *Hall*, the holograph in question began:

Roberta Leckie Rittenhouse
Written by myself     October 13th 1946
My Will

190 Va. at 463, 58 S.E.2d at 531. After five pecuniary gifts, two specific bequests, and a residuary clause, the holograph concluded, "This is My last Will and Testament[.]" *Id.* at 464, 58 S.E.2d at 531. In upholding the writing as a valid will, we stated that the writing itself showed the finality of the instrument and the testatrix's intent to make a will. *Id.* at 466, 58 S.E.2d at 533. We noted that the instrument was a complete document, disposing of the entire estate and containing no blanks. Finally, we said that the language of the will clearly showed that the name at the top was intended as testatrix's signature. The last sentence of the will, when considered with the first three lines, showed the manifest

intent of the testatrix that her name serve as her signature. *Id.* at 466-67, 58 S.E.2d at 533.

In *Dinning*, the holograph offered for probate as the will of William Dinning began with language naming an executor and directing payment of debts. After an orderly and complete disposition of testator's property, the will concluded, "I, William Dinning, say this is my last will and testament." 102 Va. at 468, 46 S.E. at 473. In reversing the trial court's denial of probate, we held that the eight words following the signature constituted an "emphatic declaration" that the signature was intended to authenticate all that preceded it. *Id.* at 470, 46 S.E. at 474. It served as the final consummation of the testator's purpose.

■ The purported will in the present case is a complete document; it disposes of Slate's entire estate and contains no blanks. The writing itself shows the finality of the instrument and Slate's intention to make a will. Slate's will begins, "I, Garland B. Slate, . . . do hereby declare this to be my last will and testament." After disposing of his entire estate, Slate wrote, "Given under my hand this 25th day of October 1986." One definition of "hand" is "[a] person's signature." Black's Law Dictionary 644 (5th ed. 1979). Moreover, the phrase, "under the hand of," means "authenticated by the . . . signature of." Webster's Third New International Dictionary 1026 (1981).

■ From a reading of the instrument as a whole, and paying particular attention to the phrase, "Given under my hand," we conclude that Slate intended his name, as written in the exordium clause, to be his signature to the will. By using the phrase, Slate adopted his name in the exordium clause as his signature, thereby authenticating all that followed it. Indeed, the phrase is just such "internal evidence" as was contemplated in *Ramsey* and its progeny.

Accordingly, we will affirm the trial court's judgment.

*Affirmed.*

Justice Lacy, with whom Chief Justice Carrico joins, dissenting.

There is no question that the author of the writing at issue intended it as his will. It is a complete document, disposing of the author's entire estate and shows the finality of the instrument. The only ingredient needed to transform a writing with these characteristics into a valid will is the name of the author appearing in

such a manner "as to make it manifest that the name is intended as a signature." Code § 64.1-49.

We must therefore determine the intent of the author when he wrote his name. The majority gleaned this intent from the authors of dictionaries, rather than from the normal and common understanding more probably used by the author of this writing. Under a plain reading of the document, I can only conclude that the author's name as it appeared in the document, "I, Garland B. Slate, Route 3-Box 456 Petersburg, Va." was used to identify himself as the testator in the declarant clause. Similarly, the closing phrase "Given under my hand", implies that the writer actually wrote the document, a phrase of particular significance in a holographic will. The fact that the phrase may be defined as "authenticated by signature" without more, does not indicate that a person's name written in the preceding lines was that authenticating signature.

Furthermore, I am unable to distinguish this case from the *Warwick* and *Ramsey* cases cited by the majority. The majority has moved from "the manifest intent of the writer" to "under any construction or circumstances", as the test under § 64.1-49 for determining the existence of a signature and, therefore, a valid will. I therefore, must respectfully dissent.